[No. B123278. Second Dist., Div. Five. Oct. 22, 1999.]

DILLON BOLTON, Plaintiff and Appellant, v.
EUGENE L. TROPE et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Howard A. Kapp and Howard A. Kapp for Plaintiff and Appellant.

Haight, Brown & Bonesteel, Roy G. Weatherup, Peter Q. Ezzell, Frances O'Meara, David K. Nelson and J. Alan Warfield for Defendants and Respondents.

**OPINION**

**ARMSTRONG, J.**—Plaintiff Dillon Bolton appeals the judgment entered following the trial court's grant of a motion for nonsuit in favor of defendants Eugene L. Trope, Trope & Trope, David R. Glickman, and Glickman & Glickman in this action for legal malpractice. Finding no error, we affirm the judgment.

FACTS

*The underlying litigation*

Bolton was involved in an automobile accident on Pacific Coast Highway in April 1991 when Joan Knapp lost control of her car as she was reaching for one of her dogs. Bolton's head hit both the windshield of his vehicle and the driver's side window. Both automobiles were declared total losses.

Approximately two weeks after the accident, Bolton retained Eugene L. Trope and his law firm, Trope & Trope, to represent him in a personal injury lawsuit against Knapp. In approximately October 1992, Trope associated David R. Glickman and his firm, Glickman & Glickman, into the case. In the spring of 1994, Bolton declined two settlement offers from Knapp's insurance company, of $30,000 and $35,000, which his attorneys recommended he accept. On June 29, 1994, the trial court granted motions filed by defendants to withdraw as counsel for Bolton.

Bolton was unable to secure successor counsel. On September 9, 1994, shortly before the trial was to commence, Bolton settled the lawsuit for $40,000. Bolton filed this action for legal malpractice nine months later. He contends "that the defendant attorneys committed legal malpractice by failing to secure and/or designate appropriate forensic mental health experts, including a neuropsychologist, to present his brain injury/cognitive impairment claim . . . ."

*Medical evaluations*

Trope initially referred Bolton to Michael Blumenkrantz, M.D., Trope's internist, who in turn referred Bolton to Clarke David Espy, M.D., a neurologist. Espy examined Bolton two weeks after the accident, and reported that Bolton had numerous subjective complaints with no objective findings. Espy concluded that he could find nothing significant and that Bolton's symptoms should subside in a matter of weeks. Espy suggested that Bolton might want to see an orthopedist or, if he preferred, a chiropractor, for evaluation. Espy made no mention of a neuropsychologist.

On June 18, 1991, June 25, 1991, and April 8, 1992, Colin W. Stokol, M.D., a second board-certified neurologist, examined Bolton. Stokol concluded that there was "little evidence to suggest sinister intracranial pathology or delayed subdural hematoma," and suggested in his report that Bolton's problems stemmed from depression. Stokol did not refer Bolton to a neuropsychologist.

On March 1, 1994, and March 16, 1994, David B. Gelles, M.D., another board-certified neurologist, examined Bolton. Gelles concluded that Bolton was suffering from posttraumatic depression. Gelles made multiple recommendations, none of which included consultation with a neuropsychologist.

*Legal malpractice case*

In arguing motions *in limine*, Bolton contended that he could only prove his malpractice case against the defendants by presenting the testimony of

Enid Reed, Ph.D., a neuropsychologist, whose testimony would establish that he suffered a brain injury as a result of the Knapp automobile accident. The trial court ruled that that evidence would not be admitted at trial. The court's ruling rested on the fact that none of the three medical doctor neurologists who examined Bolton, or any of the other many medical professionals who saw him, recommended that Bolton be examined by a neuropsychologist. Consequently, the trial court concluded that, as a matter of law, the attorneys representing the injured plaintiff had no duty to consult a particular type of expert to prove a medical condition when none of the medical experts with which the attorneys consulted so much as suggested that the attorneys do so.

In response to the court's ruling, Bolton's attorney, Howard A. Kapp, stated that "if there is no duty in this case, there is absolutely no purpose of having a trial, zero." Defendants then moved for nonsuit, based on the contention that they had no duty under the circumstances to refer Bolton to a neuropsychologist. The court ruled that evidence could be received on two other alleged breaches of duty, but Bolton's attorney elected not to proceed given the exclusion of the testimony of Dr. Reed, the neuropsychologist. The trial court then granted a nonsuit pursuant to Code of Civil Procedure section 581, subdivision (c).

## DISCUSSION

■ In order to prove their "brain injury" case against Knapp, defendants were required to rely on the opinions of medical experts. Many medical experts were consulted, and many medical tests were conducted, to determine the extent of Bolton's injuries resulting from the car accident. Bolton impliedly concedes that none of the reports generated by the three medical doctor neurologists who examined him supports his brain injury claim. Otherwise, he could have proceeded in this action by presenting the testimony of one or more of these treating physicians.

Instead, Bolton maintains that his brain injury claim could only be established by a neuropsychologist who was not consulted before he settled the underlying auto accident case. Thus, in order to prevail in the malpractice action, Bolton would have to establish that an attorney, in evaluating the medical implications of a client's personal injury claims, is duty bound to consult a neuropsychologist even when the board-certified medical experts who examined the client do not so recommend. We do not believe an attorney's duty, on these facts, extends so far.

In the absence of any California cases on point, Bolton cites *Waldman* v. *Levine* (D.C. 1988) 544 A.2d 683 [78 A.L.R.4th 703], a legal malpractice

case arising from the alleged mishandling of expert witnesses in a medical malpractice lawsuit. In *Waldman,* the attorneys in the underlying lawsuit brought a medical malpractice action on behalf of their client Swann, the administrator of the decedent's estate. The decedent had died from a pelvic thrombophlebitis, a condition including clotting in the veins in the pelvic area, 12 days after giving birth. "During exploratory surgery conducted by the attending physicians twelve days after the delivery of the child, portions of the blood clot mass broke away, traveled up the inferior vena cava, passed through the heart and into the pulmonary arteries, blocking the flow of blood to the lungs and causing death." (*Id.* at p. 685, fn. omitted.)

A local internist who reviewed the decedent's medical records on Swann's behalf to assess the care provided by the attending physicians concluded that the doctors had committed malpractice. Prior to trial, the attorneys contacted two other medical experts who agreed that the physicians had been negligent, but who advised the attorneys of the need to consult with an OB/GYN. Specifically, the attorneys were told "that an OB/GYN expert needed to determine the progression of the emboli which occluded the pulmonary artery and caused death." (*Waldman* v. *Levine, supra,* 544 A.2d at p. 685.) The attorneys did not consult with an OB/GYN. Rather, they became convinced that there had been no medical negligence. Consequently, they advised Swann to settle the case for funeral expenses and costs of litigation. When Swann indicated an unwillingness to settle on those terms, counsel moved to withdraw from the case. Before the court ruled on their motion, Swann reluctantly settled the action for $2,200, representing funeral and out-of-pocket expenses. She then sued the attorneys for legal malpractice.

At trial, Swann relied on evidence that the attorneys had failed to consult with an OB/GYN expert before recommending that she settle her case for expenses. She presented the testimony of an attorney as an expert on the standard of care, who opined that in failing to consult an OB/GYN specialist in preparing the medical malpractice case for trial, the attorneys' conduct fell below the standard of care. The jury returned a verdict of over $640,000 for Swann.

On appeal, the attorneys argued that trial court erred in permitting Swann's legal expert to testify that their failure to consult or secure expert testimony from an OB/GYN violated the standard of care for attorneys in medical malpractice cases. In rejecting this argument, the appellate court stated: "The injury in the instant case was caused shortly after the decedent gave birth to a child while she was under the care and treatment of obstetricians and gynecologists. *The medical experts whom appellants consulted advised of the necessity of consulting with experts in these medical*

*fields.* Yet no consultations occurred over more than a three year period. To suggest that under the circumstances a jury could not reasonably find that an attorney preparing a medical malpractice case was negligent if the attorney failed to consult with an OB/GYN, or failed to be certain as to the nature of any other specialists' consultations with an OB/GYN, prior to recommending that the client settle for costs, strikes us as a manifestly untenable position, particularly when appellants' own legal expert testified that his notes of their conversations indicated that appellants recognized the need to consult with such an expert." (*Waldman* v. *Levine, supra*, 544 A.2d at p. 688, italics added.)

Unlike the facts in *Waldman*, the three board-certified neurologists who examined Bolton, and on whose medical opinions Trope relied in evaluating and prosecuting the underlying lawsuit, *did not recommend* that Bolton be seen by a neuropsychologist. Thus, unlike the attorneys in *Waldman*, Trope *did not ignore the advice of the medical experts.* Rather, after obtaining the conclusions of multiple medical professionals who evaluated his client for medical problems resulting from the automobile accident, Trope determined that the insurance company's offer of settlement was reasonable. That determination was wholly consistent with the medical information available to him. For these reasons, we concur with the trial court in its ruling that defendants had no duty to retain a neuropsychologist to establish Bolton's brain injury when none of the three medical doctor neurologists who examined Bolton for purposes of diagnosis and treatment recommended that he see such a specialist.

### DISPOSITION

The judgment is affirmed. Defendants and respondents are awarded costs on appeal from plaintiff and appellant.

Turner, P. J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied November 15, 1999, and appellant's petition for review by the Supreme Court was denied February 16, 2000.